UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **HARVEY REIF**<br>c/o Attorney Mick G. Harrison<br>411 S. Henderson Street, #1<br>Bloomington, IN 47401<br><br>      **Plaintiff-Petitioner,**<br><br>v.<br><br>**U.S. DEPARTMENT OF LABOR,**<br>**EMPLOYMENT STANDARDS ADMINISTRATION,**<br>**OFFICE OF WORKERS COMPENSATION**<br>**PROGRAMS, DIVISION OF ENERGY**<br>**EMPLOYEES OCCUPATIONAL**<br>**ILLNESS COMPENSATION,**<br>**FINAL ADJUDICATION BRANCH, and**<br>**GERARD O'HARE in his official capacity as Chief,**<br>**Final Adjudication Branch,**<br>U.S. Department of Labor<br>DEEOIC<br>200 Constitution Ave., NW<br>Washington, DC 20210<br><br>      **Defendants-Respondents.** | Case No. _____ |

**COMPLAINT FOR INJUNCTIVE RELIEF AND PETITION FOR REVIEW OF AGENCY ACTION UNDER THE ADMINISTRATIVE PROCEDURES ACT AND THE ENERGY EMPLOYEES OCCUPATIONAL ILLNESS COMPENSATION ACT**

1. Plaintiff-Petitioner Harvey Reif, claimant below, hereby respectfully submits his Complaint for injunctive relief under the APA and Petition for judicial review of agency action, regarding the Department of Labor's decisions denying him compensation and benefits under the Energy Employees Occupational Illness Compensation Program Act. Plaintiff-Petitioner Reif hereby petitions the court for review of the October 10, 2023 decision denying reconsideration of the July 24, 2023 decision of the U.S. Department of Labor (DOL), Employment Standards

1

Administration, Office of Workers Compensation Programs, Division of Energy Employees Occupational Illness Compensation, Final Adjudication Branch which denied Claimant Reif's claims for compensation under Parts B and E of the Energy Employees Occupational Illness Compensation Program Act of 2000, as amended, 42 U.S.C. § 7384 et seq. and 42 U.S.C. § 7385 et seq. Petitioner Reif seeks review of these DOL decisions in their entirety.

**JURISDICTION AND VENUE**

2. Mr. Reif brings this action under the Administrative Procedures Act ("APA"), 5 U.S.C. §§ 701-706 and the Energy Employees Occupational Illness Compensation Program Act ("EEOICPA"), 42 U.S.C. §§ 7384 to 7385s-16. This Court has subject matter jurisdiction over this action pursuant to the EEOICPA, 42 U.S.C. § 7385s-6(a), and pursuant to 28 U.S.C. § 1331 (federal question). Federal questions are presented here under the APA regarding whether the challenged agency actions were arbitrary and capricious, not in accordance with law, or without observance of procedure required by law.

3. Venue is proper in this Court under, *inter alia*, 42 U.S.C. § 7385s-6.

**PARTIES**

4. Plaintiff-Petitioner (Claimant below) Harvey Reif is a former employee of DOE contractors who was exposed to high levels of radiation and other toxic substances during his work at DOE sites over a period of years. As a result, Plaintiff Reif has developed numerous cancers and applied with DOL, starting in 2005, thus far unsuccessfully, for compensation under the EEOCIPA. Plaintiff Reif is considered end stage terminal by his treating oncologist and as a result has repeatedly requested DOL to expedite the processing of his EEOICPA claims but DOL has largely ignored this request, and has, as of the filing of this Complaint and Petition, taken 18 years to evaluate and decide Mr. Reif's claims. The record evidence, which includes Mr. Reif

having suffered an extraordinary number of several types of cancers after his numerous and lengthy exposures to radiation and toxic substances at several DOE work sites with no known alternative explanation other than his DOE work for his cancers, in addition to plain common sense, supports Mr. Reif's eligibility for EEOICPA benefits but to date DOL has denied Mr. Reif any benefits under the Act. Mr. Reif is among those Congress intended to compensate for the life-threatening illnesses suffered by so many of the nation's Department of Energy contractor and nuclear workers who were exposed to dangerous radiation and other toxic substances during their civil service to the country during the cold war years (and after). Congress did not intend for such patriotic citizens who have sacrificed so much for their country to have to wait 17 years to receive even a decision on their EEOICPA benefits.

5. Defendant-Respondent U.S. Department of Labor, Employment Standards Administration, Office of Workers Compensation Programs, Division of Energy Employees Occupational Illness Compensation, Final Adjudication Branch ("FAB"), is an agency within the United States Department of Labor ("DOL") responsible for making final decisions regarding awards of EEOICPA benefits.

6. Defendant-Respondent Gerard O'Hare is Chief of the FAB.

7. Defendants arbitrarily and capriciously denied Plaintiff-Petitioner Reif's claims for compensation under Part B and Part E of the EEOICPA.

**STATUTORY AND REGULATORY BACKGROUND**

8. The EEOICPA establishes a compensation program providing benefits to individuals with illnesses caused by exposure to radiation and other toxic substances in the course of their work related to the nuclear weapons production and testing programs of the United States Department of Energy ("DOE") or its predecessor agencies. 42 U.S.C. § 7384.

9. Under Part B of EEOICPA, covered employees or their eligible survivors can receive compensation in the form of a lump-sum payment of up to $150,000.00 and medical benefits (for covered employees) for certain defined "occupational" illnesses due to their exposure to radiation, beryllium or silica in the performance of their duties at DOE facilities or the facilities of certain specified DOE contractors, subcontractors and beryllium vendors.

10. Under Part E of EEOICPA, covered DOE contractor and subcontractor employees (or their survivors) are awarded payment of medical expenses and/or compensation based upon an employee's level of permanent impairment and/or qualifying calendar years of wage-loss due to a covered illness sustained as a result of exposure to toxic substances at a DOE facility.

11. An individual asserts entitlement to benefits under both Part B and Part E of EEOICPA by filing a claim with DOL's Office of Workers' Compensation. For claims based on a radiogenic cancer, Part B provides a statutory presumption of causation for employees who are members of the Special Exposure Cohort ("SEC") and have been diagnosed with a "specified" cancer. The SEC includes employees who worked at the gaseous diffusion plant located in Paducah, Kentucky for at least 250 work days before February 1, 1992, and were monitored through the use of dosimetry badges for exposure at the plant for radiation, or worked in a job that had exposures comparable to a job that is or was monitored through the use of dosimetry badges. 42 U.S.C. § 7384l(14)(A).

12. Alternatively, claims based on the radiogenic cancers of employees who do not qualify for membership in the SEC are compensable if the cancer was sustained "in the performance of duty." A determination that the employee sustained a cancer "in the performance of duty" will be made "if, and only if, the cancer. . . was at least as likely as not related to employment" at the covered facility. 42 U.S.C. § 7384n(b). OWCP makes the determination of

whether the cancer "was at least as likely as not" (a 50% or greater standard of probability) based on an estimate (attempted reconstruction) of the radiation dose the employee received, which dose estimate/dose reconstruction is provided by the National Institute for Occupational Safety and Health ("NIOSH").

13. To establish eligibility for any Part E benefit payable to a living worker, the evidence must show that the worker is a "covered DOE contractor employee" and that he contracted a "covered illness" as a result of work-related exposure to toxic substances at a DOE facility. 42 U.S.C. § 7385s (1) and (2). Under the specific terms of 42 U.S.C. § 7385s-4(c)(1)(A)-(B), a claimant must prove that it is at least as likely as not that exposure to a toxic substance at a DOE facility was a significant factor in aggravating, contributing to, or causing the illness, and that it is at least as likely as not that the exposure to such toxic substance was related to employment at a DOE facility.

14. After completing the necessary factual and evidentiary development of the entitlement aspects of a claim under Part B and/or E, OWCP Division of Energy Employees Occupational Illness Compensation ("DEEOIC") issues a recommended decision informing the claimant of its recommended findings of fact and conclusions of law. Under the agency rules, following issuance of a recommended decision, the claimant has 60 days within which to file written objections with the FAB. FAB should consider any objections to the recommended decision filed by the claimant and conduct an informal oral hearing, if one is requested by the claimant, before issuing the final agency decision on the claim.

15. Under the agency rules, a claimant may request reconsideration of a final decision within 30 days of the issuance of that decision. If FAB grants such a request, it will consider the written record of the claim again and issue a new final decision. If FAB denies the request, the

FAB decision that formed the basis for the request is considered "final" upon the date that the request is denied.

16. At any time after FAB has issued a final decision on an EEOICPA claim, the Director of the DEEOIC within OWCP may vacate the final decision or any other type of decision issued by FAB, reopen the claim at issue and return it either to FAB for issuance of a new final decision, or to OWCP for further development and the issuance of a new recommended decision, to be followed by a new final decision.

17. A claimant whose EEOICPA claim is reopened by the Director of DEEOIC will have the same administrative review rights regarding a resulting new recommended or final decision as set forth above.

**PROCEDURAL HOSTORY**

18. Plaintiff Reif filed his first application for benefits under the EEOCIPA in 2005.

19. A number of DOL decisions have been issued, reconsidered, and/or reopened since then regarding his claims over the last 18 years, and a great deal of medical evidence has been submitted. As a result, the administrative record is voluminous.

20. On July 24, 2023, the DOL FAB issued a final decision denying Mr. Reif's claims under both Part B and Part E of the EEOICPA. On October 10, 2023, the DOL FAB issued its decision denying Mr. Reif's request for reconsideration of the July 24, 2023 decision, making that decision final.

21. The denial by DOL of Mr. Reif's EEOICPA Part E claim is subject to judicial, within 60 days, in this Court pursuant to 42 U.S.C. § 7385s-6. The instant Coplaint and Petition is being timely filed within that 60 day period.

22. Judicial review of decisions denying EEOICPA Part B claims is not addressed in

the EEOICPA, and review is timely sought here of the DOL's denial of Mr. Reif's Part B claim pursuant to the APA.

**FACTS COMMON TO ALL COUNTS**

23. Mr. Reif was a Department of Energy (DOE) contractor employee who worked at the Savannah River Site (SRS) as a Senior Staff Analyst from November 1, 1988 to September 30, 1994 and Technical Writer from October 1, 1994 to October 1, 1995; at the Paducah Gaseous Diffusion Plant (GDP) as a Senior Training Specialist and Technical Writer from March 1, 1996 to June 30, 1998 and from June 5, 2000 to February 2, 2001, and as a Senior Technical Writer from January 22, 2002 to August 16, 2002; at the SRS as a Quality Control (QC) Engineer from August 16, 2002 to February 5, 2004; at the Nevada Test Site (NTS) as a Senior Workforce Specialist from November 13, 2006 to February 5, 2008; and at the SRS as a Training Specialist from May 12, 2009, to November 23, 2010.

24. The SRS, Paducah GDP, and NTS are covered DOE facilities under the EEOICPA.

25. Mr. Reif was diagnosed with pancreatic cancer on May 24, 2016, and with 31 primary skin cancers. He was also diagnosed with the primary cancers of the kidneys (left and right), bladder and rectum.

26. The NIOSH-IREP does reconstructions performed for DOL in Mr. Reif's case indicated at various times (based on varying DOL/NIOSH assumptions) probabilities that radiation exposure at the SRS, Paducah GDP, and NTS caused his cancers (probability of causation, PoC) in the range of 39-43% (not including the new evidence of materials at the PGDP having high levels of uranium contamination as well as plutonium and other transuranics).

27. Mr. Reif provided a July 1, 2009, medical opinion by Keith Davis, M.D. Dr.

Davis that stated that Mr. Reif had been exposed to toxic substances with a connection to skin cancer. He associated Mr. Reif's cancer to work at the SRS. A July 9, 2009, report from Henry Goodwin, M.D., presented an opinion that your many different cancers were highly suspicious for being related to exposure to radiation and chemical use at SRS and the Paducah GDP. In an October 4, 2021, narrative from Dr. Limbaugh, he reported that Mr. Reif was diagnosed with pancreatic cancer, and that Mr. Reif's exposures to toxic chemicals and radioactive transuranic contamination at least as likely as not contributed to Mr. Reif's pancreatic cancer. A November 16, 2021, statement by Dr. Munoz reported that Mr. Reif's exposure to toxic chemicals and radioactive contamination resulted in Mr. Reif's pancreatic cancer.

28. Mr. Reif's job at the Paducah GDP required him to perform "walk downs" and closely observe work performed by others in the field. He had exposure to radioactive waste and polychlorinated biphenyls (PCBs) while closely working with waste operators. At the SRS, he spent a significant amount of time in the field working with responders to evaluate their performance. He also performed quality control inspections in material storage areas, the tank farm area, and the H and F Areas. Over half of his time was spent on nuclear fuel work.

29. Dr. Davis provided a medical opinion stating that Mr. Reif was exposed to toxic substances that have the potential to cause, contribute to, or aggravate your skin cancers.

30. Dr. Limbaugh, Mr. Reif's treating oncologist, opined in an August 23, 2023 report that Mr. Reif's employment at DOE facilities resulted in exposures to multiple toxic substances that aggravated or contributed to his claimed cancers.

31. Dr. William E. Wright confirmed in his February 18, 2010 report that Mr. Reif worked at locations where arsenic, mineral oils. coal tar, carbon, and diesel exhaust were present.

**COUNT I:   DEFENDANTS' ACTIONS IN DENYING EEOICPA PART B AND PART**

## E BENEFITS TO MR. REIF ARE ARBITRARY AND CAPRICIOUS

32. The foregoing paragraphs are incorporated herein by reference.

33. The DOL's denial of Mr. Reif's EEOICPA Part B and Part E claims was arbitrary and capricious for the following reasons.

34. The agency's October 10, 2023 denial of reconsideration explicitly misconstrued Mr. Reif's request for reconsideration as asking only that his new evidence be considered in relation to his Part E claim. As a consequence, the agency erroneously failed to reconsider Mr. Reif's Part B claim in light of the new evidence Mr. Reif submitted prior to the October 10, 2023 agency decision to deny reconsideration.

35. The agency should have recognized that Mr. Reif is at a disadvantage in attempting to quantify his exposures to these highly dangerous materials that occurred while he was working at the Paducah GDP because the Department of Energy (DOE) and its contractors failed to properly monitor Mr. Reif and other workers for such exposures, failed to document and report such exposures, failed to adequately test materials present for such contamination, and failed to timely disclose to Mr. Reif and other workers the presence of these highly dangerous materials in the Paducah GDP workplace. Consequently, it is unfair and contrary to the intention of the Congress under the EEOICPA to place the burden of quantifying or proving details of such exposures on the victim, in this case Mr. Reif. Rather, it would be fair and consistent with the intent of Congress under the EEOICPA to apply a rebuttable presumption (or adverse inference), based on the documented presence in the workplace of plutonium and materials contaminated with high levels of uranium and transuranic materials, that had the DOE and its contractors properly monitored for such exposures and properly tested these materials and timely reported the results, that a fully informed POC would have exceeded 50%, particularly where, as

here in Mr. Reif's case, Mr. Reif has provided information that results in a calculation via a dose reconstruction of a substantial probability of causation (POC) for covered cancers, even though the calculated POC is below 50% (without considering the presence of plutonium and materials contaminated with high levels of uranium and transuranic materials). Therefore Mr. Reif should be deemed entitled to an award of full financial and other benefits under Part B.

36.     Pursuant to the EEOICP Act, Part E claims do not require preparation of a Dose Reconstruction in order for Part E claims to be approved for compensation. It is not appropriate for the agency to deny a Part E claim that meets the requirements of the Act based on application of inconsistent internal policies and procedures. If the new evidence Mr. Reif submitted is properly evaluated, evidence which documents the presence at the Paducah GDP of plutonium and materials contaminated with high levels of uranium and transuranic materials, Mr. Reif would be entitled to full benefits Part E. As noted above in the discussion of the proper procedure for evaluating this new evidence with respect to Mr. Reif's Part B claim, Mr. Reif requests that the agency recognize, in evaluating his Part E claim, that Mr. Reif is at a disadvantage in attempting to quantify his exposures to the highly dangerous materials documented in the new evidence to be present at the Paducah GDP. Mr. Reif is at this disadvantage due to no fault of his own. The Department of Energy (DOE) and its contractors failed to properly monitor Mr. Reif and other workers for such dangerous exposures, failed to document and report such exposures, failed to adequately test materials present for such dangerous contamination, and failed to timely disclose to Mr. Reif and other workers the presence of these highly dangerous materials in the Paducah GDP workplace. Consequently, it is unfair and contrary to the intention of the Congress under the EEOICPA to place the burden of quantifying or proving details of such exposures on the victim, in this case Mr. Reif. Rather, it

would be fair and consistent with the intent of Congress under the EEOICPA, once a claimant such as Mr. Reif has provided information that such dangerous materials were present in the workplace, and that he developed a cancer or other illness associated with exposure to such dangerous materials, to apply a rebuttable presumption (or adverse inference), based on the documented presence in the workplace of plutonium and materials contaminated with high levels of uranium and transuranic materials, that had the DOE and its contractors properly monitored for such exposures and properly tested these materials and timely reported the results, that Mr. Reif (and DOL/DEEOICP) would have had sufficient information regarding such dangerous exposures to support an award under Part E.

37. Given the presence of plutonium and high levels of uranium at the PGDP as reflected in the submitted new evidence, in the absence of a compelling alternative explanation for Mr. Reif's many cancers, it should have been presumed that his exposures to these highly radioactive materials, which are occupational toxic substances, caused, contributed to, or aggravated his skin cancers and pancreatic cancer.

38. The DOL failed to credit Dr. Limbaugh's following opinion: "The fact that Harvey Reif has numerous cancers of various types indicates a history of significant exposures to multiple carcinogens. Mr. Reif's DOE employments resulted in exposures to multiple toxic substances which have the capability of causing, aggravating, or contributing to the type of cancers Mr. Reif has exhibited. Mr. Reif has no other significant exposure to multiple carcinogens other than while performing his work duties at the DOE facilities. The studies I have reviewed, Mr. Reif's work history, and the absence of any other known exposures to carcinogens cause me to conclude that it is at least as likely as not that Mr. Harvey Reif's DOE work related exposures to the several

11

toxic substances referenced above were a contributing or aggravating cause of Mr. Reif's cancers listed above."

39. It was error for the agency to conclude, under Part E, that the submitted evidence did not support the conclusion that exposures to the identified toxic substances were work related since the work records reveal that at the Savannah River Site Mr. Reif worked in the K- reactor area, the H-area, F-area, and the F & H tank farms. Mr. Reif worked also in the low-level hazardous waste area while at Savannah River where he was exposed to plutonium, transuranic, uranium, tritium, strontium (as he was at Paducah based on the new evidence).

40. DOL failed to properly evaluate and incorporate into its decisions on Mr. Reif's claims the 130 pages of newly submitted evidence showing the presence of plutonium, materials contaminated with high levels of uranium and transuranic materials at the Paducah GDP.

41. The agency erred in concluding that a PoC calculation was required under Part E.

42. FAB and the District Office erred in limiting Site Exposure Matrices searches to Mr. Reif's labor categories and not searching all the areas where his work duties were performed.

43. The DOL's Final Decision erred in not addressing whether a combination of radiation and other toxic substances aggravated or contributed to Mr. Reif's cancers under Part E of the Act.

44. The DOL DEEOIC denied Mr.Reif access to a July 11, 2023 report by its health physicist and a "PoC Report." Thus, FAB should have but did not adopt an "adverse inference" with respect to that evidence.

45. DOL erred in omitting Mr. Reif's employment at Portsmouth GDP.

46. DOL and NIOSH failed to follow their own policy of using claimant-favorable assumptions in preparing a PoC and arriving at a reasonable estimate of the organ dose to the cancer sites.

47. DOL concluded that with regard to pancreatic cancer, the Site Exposure Matrix (SEM) contains no data that documents a known humanistic relationship between that type of cancer and any toxic substance. However, DOL should have considered whether relevant animal studies evidenced such a relationship.

48. The NIOSH dose reconstructions for DOL for Mr. Reif were inadequate because they failed to consider all periods of covered employment, specifically employment in 2004 at the Honeywell Metropolis Works Plant.

49. The burden DOL is requiring in Mr. Reif's case, in practice if not in stated policy, is that he demonstrate, under DOL's false standard, that his toxic exposures at least as likely as not actually *caused his cancers* (as distinguished from merely being a *significant factor* in *contributing* to causing or *exacerbating* his cancers). Although a dose reconstruction might be a necessary step to develop evidence in Mr. Reif's case if DOL's false standard actually was the law, it simply is not. Mr. Reif does not have to prove that at least as likely as not his toxic (including radiation) exposures actually caused his cancers. His burden is simply to show that his toxic exposures as likely as not were a significant factor in *contributing to causing or contributing to exacerbating his cancers.* His existing record evidence meets the actual burden imposed by law.

50. Mr. Reif's DOL case record makes clear that he suffered exposures during the times of his covered employments to both toxic radiation and to non-radioactive toxic substances. The actual legal standard for approval of a Part E claim is simply that it is at least as

13

likely as not that exposure to a toxic substance at a Department of Energy facility was a significant factor in aggravating, contributing to, or causing the illness.  "Significant factor" has a very non-demanding definition of simply "any factor."  Under this correct standard, a claimant is eligible for Part E benefits not only if their toxic exposures as likely as not were a significant factor in causing their cancer(s), but also if their toxic exposures as likely as not were a significant factor in merely contributing to causing or contributing to exacerbating their cancers. DOL now, at least in Mr. Reif's case, is either misconstruing or misrepresenting the law applicable to Part E claims to impose a substantially greater, but legally incorrect and nonexistent, burden of proof on Part E claimants, a burden than neither Congress nor even the DOL intended.

51.   NIOSH and DOL arbitrarily and erroneously prepared and accepted revised PoC calculations for Mr. Reif that were lower than prior PoC calculations even though more cancers had been added.

52.   For these reasons, under this APA standard that requires the agency to base its decision on a consideration of all the relevant factors and evidence before the agency, the DOL's denial of Mr. Reif's claims should be deemed arbitrary and capricious.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff-Claimant Harvey Reif respectfully requests that this Court:

A.   Vacate the Defendants' decision denying Plaintiff Reif Part B benefits under the EEOICPA, and award Mr. Reif full Part B benefits under the EEOICPA;

B.   Vacate the Defendants' decision denying Plaintiff Reif Part E benefits under the EEOICPA, and award Mr. Reif full Part E benefits under the EEOICPA;

  C. In the alternative, vacate the Defendants' decisions denying Plaintiff Reif benefits under Part B and Part E of the EEOICPA, and remand the matter to the DOL EEOIC Program for further proceedings to further evaluate Mr. Reif's claims consistent with the requirements of the EEOICPA and the APA;

  D. Order Defendants to pay to Mr. Reif his reasonable attorneys' fees and costs in prosecuting this action; and

  E. Grant such further relief as the Court may deem just and proper.

Dated: December 11, 2023

          Respectfully submitted,

          /s/ Mick G. Harrison
          Mick G. Harrison, Attorney at Law, No. IN 0015
          520 S. Walnut Street, #1147
          Bloomington, IN   47402
          Phone: 812-361-6220
          Fax: 812-233-3135
          E-mail: mickharrisonesq@gmail.com